ORIGINAL

FILED
JUN 2 1 2006
U.S. COURT OF
FEDERAL CLAIMS

ECF

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHAPMAN LAW FIRM CO.

Plaintiff,

v.

THE UNITED STATES

Defendant.

CFC No. 06-473 C

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

James S. DelSordo, Esq.
John J. O'Brien, of Counsel
Cohen Mohr LLP
1055 Thomas Jefferson St., NW
Suite 504
Washington, D.C. 20007
(202) 342-2550
fax (202) 342-6147

Counsel for Plaintiff Chapman Law Firm Co., LPA

## TABLE OF CONTENTS

I. Questions Involved....................1

II. Statement of the Case....................1

A. The RFP....................1

B. The CLF Size Protest....................3

C. The Size Determination on Remand....................5

D. Greenleaf's Proposal....................5

E. The Further Progress of the Procurement....................7

III. Argument....................8

A. It is Likely that Chapman Law Firm Will Succeed on the Merits in this Litigation....10

B. Chapman Law Firm will Suffer Immediate Irreparable Injury....................11

C. The Harm to Chapman Law Firm Far Outweighs the Harm to HUD or Greenleaf....12

D. It is in the Public's Interest to Grant the Injunction....................12

IV. Conclusion....................13

# TABLE OF AUTHORITIES

I. Regulations

13 CFR § 121.103 .......... 10

48 CFR § 19.302(i) .......... 12

II. Caselaw

Greenleaf Const. Co., Inc. v. United States, 67 Fed. Cl. 350 (2005) .......... 8

SDS International, Inc. v. United States, 55 Fed. Cl. 363 (2003) .......... 9

Cincom Systems, Inc. v. United States, 37 Fed. Cl. 266 (1997) .......... 9

Size Appeal of ePerience, Inc., SIZ-4668 (2004) .......... 10

Size Appeal of Leonardo Technologies, Inc., SIZ-4597 (2003) .......... 11

Fountain Enter., Inc., SIZ-88-8-15-120 (1988) .......... 11

Aerolease Long Beach & Satsuma Investment, Inc. v. United States, 31 Fed. Cl. 342 (1994) .......... 11

National Maritime Union of America v. Commander, MSC, 824 F.2d 1228 (D.C. Cir. 1987) .......... 11

O'Donnell Construction Co. v. District of Columbia, 963 F.2d 420 (D.C. Cir. 1992) .......... 11

Varicon International, *et al.* v. Office of Personnel Management, 934 F. Supp. 440 (D.D.C. 1996) .......... 11

Chapman Law Firm LLP v. United States, ___ Fed. Cl. ___, WL 1594087 (June 7, 2006) .......... 12

Logicon, Inc. v. United States, 22 Cl. Ct. 776 (1991) .......... 12

**COMES NOW** the Chapman Law Firm Co., LPA ("CLF"), by and through undersigned counsel, and hereby files this Motion for Preliminary Injunction under Fed. R. Civ. P. 65(a) and the Rules of the United States Court of Federal Claims. For the reasons set forth below the Court should enjoin the Small Business Administration's Office of Hearing and Appeals ("OHA") from maintaining its reversal of the finding by the SBA Area Office that Greenleaf Construction Co., Inc. ("Greenleaf") was other than small for the purposes of the Department of Housing and Urban Development's ("HUD's") procurement for Management and Marketing of Single Family Homes services under Request for Proposal Number R-OPC-22505. Additionally, the Court should enjoin HUD from including Greenleaf in the small business competitive range for this procurement.

## I. <u>Questions Involved</u>

Whether the Small Business Administration's Office and Hearing and Appeals properly overturned the finding of the cognizant Area Office's determination that Greenleaf was other than small for the purposes of this procurement?

## II. <u>Statement of the Case</u>

### A. <u>The RFP</u>

On August 6, 2003, HUD issued a solicitation for the Management and Marketing of Single Family Homes under Request for Proposal Number R-OPC-22505, which seeks proposals to provide:

> Management & Marketing services to successfully monitor mortgagee compliance with the Department's property conveyance requirements, to successfully manage single family properties owned by, or in the custody of, the Department of Housing and Urban Development (HUD), to successfully market those single

> family properties which are owned by HUD, and to successfully oversee the sales closing activity, including proper accounting for HUD's sales proceeds.

RFP at 3.

The RFP stated that "The Government intends to award up to twenty-four (24) contracts without discussions and to those Offerors whose proposals represent the best overall value to the Government. The Government reserves the right to hold discussions with all Offerors determined to be in the Competitive Range." RFP at 269.

The RFP's three primary performance areas are: (1) ensuring mortgagee compliance, (2) property management, and (3) marketing and sales. There is also a general tasks area, which relates to each primary performance area. Nowhere in the RFP are the three primary performance areas ranked against each other in importance.

The RFP identifies three objectives of the property disposition program, and each objective relates to one of the three primary performance areas. These objectives are: (1) mortgagee compliance with HUD's property conveyance requirements; (2) maintain HUD-owned and custodial properties in a manner that preserves communities and maintains the value of the properties; and (3) market and sell HUD-owned properties to maximize net return, minimize holding time, and expand homeownership. Nowhere in the RFP are the three objectives ranked against each other or against the "general tasks" in importance.

OHA found that the RFP reveals five Contract Line Item Numbers ("CLINs") which correspond to five areas of performance. CLIN 0001 is Property Management involving the management and maintenance of the HUD-owned single-family homes. CLIN 0002 is Vacant Lot Management, performing the same services for HUD-owned vacant lots. CLIN 0003 is Marketing, involving the marketing and sale of the HUD-owned properties. CLIN 0004 involves

the management of those properties HUD is holding off the market. CLIN 0005 is custodial work at properties managed by, but not owned by, HUD. Each CLIN represents a fixed fee per property. RFP at ¶ B.7.

Chapman submitted a proposal that was found to be within the "competitive range" for award of the M&M Contract. Chapman engaged in a series of written negotiations with HUD regarding potential award of the M&M Contract.

**B. <u>The CLF Size Protest</u>**

On July 8, 2004, the Contracting Officer (CO) notified the offerors that Greenleaf was the apparent successful offeror. On July 14, 2004, CLF filed a size protest against Greenleaf. CLF alleged that Greenleaf was other than small because its relationship with its ostensible subcontractor, Michaelson, Connor & Boul, Inc. ("MCB"), MCB is also the incumbent contractor, was really that of a joint venture.

On July 29, 2004, the SBA Office of Government Contracting - Area IV (the "Area Office") in Chicago, Illinois, issued Size Determination No. 4-2004-60. In that decision the Area Office found that, although Greenleaf's receipts were below the size standard, because Greenleaf was engaged in a joint venture with MCB, and therefore MCB's receipts had to be combined with those of Greenleaf, Greenleaf was other than small for this contract.

On August 13, 2004, Greenleaf filed an appeal of the Area Office decision with OHA. On November 1, 2004, OHA issued Greenleaf I, remanding the case to the Area Office for a new size determination.

In Greenleaf I, in addition to finding the size determination conclusory and based on only a superficial review of the evidence, the OHA Administrative Judge found the Area Office had

been unclear as to the test it was applying on the ostensible subcontractor issue, and ordered the Area Office, on remand, to use only the "unusual reliance" test provided in the regulation, and not the "seven factors" test. The OHA Administrative Judge also ruled the mention of "team" and "partnering" between Greenleaf and MCB, throughout Greenleaf's entire proposal and that significant portions of the proposal were written in the "voice" of MCB, did not mandate an ostensible subcontractor relationship.

**C. The Size Determination on Remand**

On December 2, 2004, the Area Office issued Size Determination No. 4-2004-60 (R), which reaffirmed its earlier determination that Greenleaf was engaged in a joint venture with MCB, and was thus other than small.

In its remand decision the Area Office began by finding that Greenleaf's sole shareholder is Bryon L. McIntosh. Mr. McIntosh's wife and son own Pillar Construction ("Pillar"), an inactive corporation. The Area Office found Greenleaf affiliated with Pillar, due to the family ties. The Area Office also found that Greenleaf and its affiliate Pillar, taken together, are small under the applicable size standard.

**D. Greenleaf's Proposal**

According to the OHA decision, the Area Office reviewed Greenleaf's Organizational Management and Structure in its proposal and addressed the responsibilities performed. The organizational chart identifies 23 individuals by name. Of these 23, assuming all commitment letters and agreements are fulfilled, 10 are Greenleaf's employees, 12 are MCB employees, and 1 is employed by another firm. The proposal also includes resumes of 21 other individuals, 20 of whom would be MCB employees. As a result, nearly 73% of the individuals identified in the

Greenleaf proposal will be MCB employees. The Area Office found the Director of Administration will be an MCB employee, and four of Greenleaf's employees will report to him. In addition, at least two high-level MCB managers will be advising Greenleaf's CEO.

The five key personnel the proposal identifies for contract management are Greenleaf's CEO, and MCB's CEO, Vice-President, Secretary/Treasurer and Chief Operating Officer. The Area Office also pointed out that HUD had noted in its written negotiation items that Greenleaf had little experience in single-family property management and Greenleaf's reply emphasized the participation of MCB management.

According to the OHA decision, the Area Office therefore found that MCB would play a significant role in contract management.

According to the redacted version of the OHA decision, in reviewing the Distribution of Work under the proposal, the Area Office found that Greenleaf would distribute work tasks to give 95% of the [CONTRACT TASK AREA A][1] work, 90% of the [CONTRACT TASK AREA B] work, and 25% of the General Requirements work to MCB; and handle 75% of the [CONTRACT TASK AREA C] and General Requirements work, 5% of the [CONTRACT TASK AREA A] work, and 10% of the [CONTRACT TASK AREA B] work itself.

According to the redacted version of the OHA decision, Greenleaf would give 25% of [CONTRACT TASK AREA C] work to other subcontractors. The Area Office further found Greenleaf will perform 52% to 56% of the total contract dollars, MCB will perform 19%, and 29% will be performed by other subcontractors. As to facilities, Greenleaf and MCB will be located in different suites of the same building.

[1] The information in brackets was redacted from the published OHA decision.

The Area Office reviewed Greenleaf's past performance, and found none of its examples were similar to this procurement in size or overall scope of work, nor were they for HUD. Conversely, all of MCB's examples are HUD contracts similar to the instant procurement. The proposal provides 16 examples of problems solved, but 13 of them by MCB. Further, MCB's examples of problems solved (*i.e.*, protecting HUD assets in an area with severe weather) was more relevant to this contract than Greenleaf's (*i.e.*, handling plumbing problems).

Therefore, the Area Office found MCB had experience in Property Management, Marketing & Sales, and Mortgagee Compliance, while Greenleaf's experience is only in Property Management, with little in Marketing & Sales, and none in Mortgagee Compliance.

According to OHA, the Area Office also found much of the proposal is written in the voice of MCB. The references to MCB are in the first person, and those to Greenleaf are in the third person. Further, the proposal presents Greenleaf and MCB as a single united force, a "team."

The Area Office concluded that MCB played a major role in proposal preparation, and without MCB's efforts, Greenleaf would not or could not be able to perform this contract.

Because MCB will be performing nearly all of two of the three tasks considered to be the primary and vital requirements of the contract, Greenleaf is unusually reliant upon MCB to perform the primary and vital requirements of the contract. Therefore, Greenleaf is engaged in a joint venture with MCB, and is thus affiliated with it for this contract, and is thus other than small.

E. <u>The Further Progress of the Procurement</u>

On December 17, 2004, Greenleaf filed an appeal of the Area Office remand decision to OHA. On April 20, 2005 the Plaintiff learned via a review of HUD's website that award had been made to Greenleaf under the RFP for Philadelphia 2. The award was dated April 19, 2005; however, HUD's website identified the effective date of the contract as April 1, 2005. CLF immediately requested a debriefing from the contracting officer on April 20, 2005. CLF received a written debriefing on May 2, 2005.

According to the debriefing provided to the Plaintiff both Greenleaf and CLF received the highest technical ratings of Excellent. CLF's proposed price was in the middle of the prices offered by the concerns considered for award. Specifically, according to the debriefing, Greenleaf's total estimated price was $106,756,714, the Plaintiff's total estimated price was $123,235,990.

Based on the information in the debriefing, CLF protested the award to Greenleaf to the Comptroller General, which protest was docketed as <u>Chapman Law Firm Co., LPA</u>, B-293105.15, B-293105.16. The Plaintiff's protest was predicated on the Government's award of a contract to a large business when there was adequate competition among small business firms, and this award was restricted to award to small businesses. CLF timely supplemented its protest to allege that Greenleaf's false certification of its size status rendered it illegible for award.

HUD moved to dismiss the protest on the basis that it did not receive adequate competition under the terms of the RFP because of the withdrawal of another offeror from the procurement. The Comptroller General sought the input of the SBA concerning the issue of whether adequate competition was achieved under the terms of the RFP. By letter, dated June 2,

2005, the SBA stated that adequate competition had been achieved and recommended that the Comptroller General sustain CLF's protest.

In its brief the SBA asserted, correctly, that Greenleaf's subsequent determination of size status would not permit the cascade to unrestricted award even if CLF was the only small business offeror remaining. Id. at 3. The SBA concluded that the award to Greenleaf was improper and urged the Comptroller General to sustain CLF's protest. Despite a scheduling order directing the agency to respond to the SBA's submission, HUD elected to file no response. CLF filed its comments to the agency report on June 10, 2005. By letter, dated June 17, 2005, HUD announced its intention to take corrective action by terminating Greenleaf's contract and awarding a contract for the Philadelphia 2 marketing and management services to CLF. HUD subsequently terminated Greenleaf's contract for the convenience of the Government.

Greenleaf then protested HUD's corrective action to the U.S. Court of Federal Claims, which protest was denied on August 31, 2005. See Greenleaf Const. Co., Inc. v. United States, 67 Fed. Cl. 350 (2005).

By letter, dated September 30, 2005, HUD awarded a contract to the Plaintiff under the Solicitation to provide single family home marketing and management services in the Philadelphia Homeownership Center ("HOC"), Region 2 (Ohio and Michigan).

On February 16, 2006, OHA upheld Greenleaf's appeal and found that Greenleaf and OHA were not affiliated for this procurement.

## III. Argument

Plaintiff's case meets each of the injunction factors applied by the U.S. Court of Appeals for the Federal Circuit. CLF has a substantial likelihood of succeeding on the merits of its

protest in that the OHA decision is not properly based on the record of the Area Office decision and is contrary to the law relating to determinations of contractor size status.

In considering a motion for a preliminary injunction, this Court applies the following criteria:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;

(2) the likelihood that the plaintiff will succeed on the merits; and

(3) whether a preliminary injunction will be contrary to the public interest.

See SDS International, Inc. v. United States, 55 Fed. Cl. 363 (2003); Cincom Systems, Inc. v. United States, 37 Fed. Cl. 266 (1997).

CLF was awarded a contract under the RFP on September 30, 2005. OHA's decision at issue here is dated February 16, 2006, over five months after the date of the award to CLF. The award to CLF has never been disturbed or overturned, nor has CLF been found to be non-responsible.

Evaluation of Greenleaf in the small business tier of this procurement leads to irreparable harm to CLF. CLF is the only legitimate small business remaining in the procurement, and any evaluations under the RFP should be held of CLF alone. CLF will not be able to recover any lost profits that would have been realized if it had been allowed to perform the contract services.

The threatened injury to Plaintiff that will result from the application of the OHA decision to this procurement outweighs any damage that the Government or Greenleaf may suffer. The public interest demands that the Court overturn the decision of OHA and reinstate the findings of the Area Office.

A. It is Likely that Chapman Law Firm Will Succeed on the Merits in this Litigation.

In overruling the Area Office's decision OHA ignored or disregarded without any rational reason the following clear indicia of affiliation between Greenleaf and its subcontractor MCB:

1. Greenleaf and MCB have offices in the same building

2. MCB was heavily involved in the pricing of Greenleaf's proposal

3. Employees of prime contractor will report to employees of subcontractor

4. MCB will be heavily involved in the management of the contract

5. MCB personnel will train and coach Greenleaf personnel

6. Prime Contractor does not have technical expertise to perform without MCB, Greenleaf has no experience in mortgagee compliance and little experience in marketing and sales

7. MCB's past performance is much more relevant to the RFP's requirements than Greenleaf's past performance.

8. Greenleaf's proposal written in voice of MCB and refers to Greenleaf as MCB subcontractor

9. Greenleaf and MCB will have joint logos, headers and footers referring to "The Greenleaf/MCB Team" and references to "our" proposal

10. Four of the five Key Corporate Management Personnel in the proposal are MCB employees.

11. A number of the letters of commitment included in the proposal commit the key personnel to employment with MCB and not Greenleaf.

OHA's precedent and the SBA's regulations demonstrate that all of these connections and the over reliance of Greenleaf on MCB to perform the contract should have led to OHA's upholding of the Area Office's repeated findings that Greenleaf is other than small for this procurement. See 13 CFR § 121.103; Size Appeal of ePerience, Inc., SIZ-4668 (2004); Size Appeal of

Leonardo Technologies, Inc., SIZ-4597 (2003); Fountain Enter., Inc., SIZ-88-8-15-120 (1988) (A firm is an affiliate of its ostensible subcontractor where it has contracted with the latter to perform the primary and vital elements of the procurement which it cannot itself perform).

Clearly, there is no way that Greenleaf could perform this contract effort without MCB, and the OHA decision should be overturned reinstating the repeated decisions of the Area Office finding that Greenleaf is other than small for this procurement.

**B. Chapman Law Firm will Suffer Immediate Irreparable Injury.**

CLF was awarded a contract under the RFP on September 30, 2005. OHA's decision at issue here is dated February 16, 2006, over five months after the date of the award to CLF. The award to CLF has never been disturbed or overturned, nor has CLF been found to be non-responsible.

Evaluation of Greenleaf in the small business tier of this procurement leads to irreparable harm to CLF. CLF is the only legitimate small business remaining in the procurement, and any evaluations under the RFP should be held of CLF alone. CLF will not be able to recover any lost profits that would have been realized if it had been allowed to perform the contract services.

Many Courts have found that plaintiffs would be irreparably injured in the face of much more speculative harms. See Aerolease Long Beach & Satsuma Investment, Inc. v. United States, 31 Fed. Cl. 342 (1994); National Maritime Union of America v. Commander, MSC, 824 F.2d 1228 (D.C. Cir. 1987); O'Donnell Construction Co. v. District of Columbia, 963 F.2d 420 (D.C. Cir. 1992); Varicon International, *et al.* v. Office of Personnel Management, 934 F. Supp. 440 (D.D.C. 1996) (plaintiff would be irreparably injured by the loss of its opportunity to participate in a procurement process free from taint). Clearly, the loss of CLF's status as the only

remaining small business in this procurement is an irreparable injury which injury is solely related to the erroneous decision from OHA; but for the OHA decision and the Court's improper analysis that the OHA decision applies to this procurement CLF would be the only small business in the competitive range for this procurement. See Chapman Law Firm LLP v. United States, ___ Fed. Cl. ___, WL 1594087 (June 7, 2006); 48 CFR § 19.302(i).

**C. The Harm to Chapman Law Firm Far Outweighs the Harm to HUD or Greenleaf**

It is beyond cavil that Chapman Law Firm will be irreparably injured by the loss of an effective remedy based upon the improper decision of OHA. If the Contracting Officer proceeds with an evaluation of Greenleaf at the small business tier after Greenleaf was found to be other than small which decision was only reversed after the award of a contract to CLF, there will be a gross corruption of the size protest rules laid out in the Federal Acquisition Regulation. Chapman will be irreparably harmed and will not be able to recover any lost profits that would have been realized if it had been allowed to perform the contract services. The threatened injury to Chapman that will result if the Contracting Officer is allowed to continue the illegal inclusion of Greenleaf in the competitive range after it was excluded from that class. Furthermore, Greenleaf and HUD cannot be injured by the prevention of the performance of an improper evaluation which could lead to an illegally awarded contract.

**D. It is in the Public's Interest to Grant the Injunction.**

It is beyond a doubt that the public's interest lies in its ability to have faith in the procurement process and for offeror's to receive an effective remedy when the Government violates those rules. As the Court of Federal Claims stated in Logicon, Inc. v. United States, 22

Cl. Ct. 776 (1991), the concept of a level playing field is at the heart of the federal procurement system.

Preventing CLF from enjoying the proper determinations of the Area Office finding Greenleaf other than small and permitting a company which is not a legitimate small business to compete for and possibly be awarded a contract to perform the management and marketing services for the Philadelphia Area 1, a small business set-aside, exposes the Government to needless expense, is contrary to statute, and is simply unfair to CLF; therefore, the Court should immediately enjoin the Government's course of action.

## IV. Conclusion

Based on the foregoing Plaintiff respectfully requests that the Court grant CLF relief as follows:

1) That the Court overrule the decision of the Office of Hearing and Appeals and reinstate the decision of the Area Office finding Greenleaf other than small for the purposes of this procurement.

2) That the Court enjoin HUD from permitting performance of any contract under Solicitation R-OPC-22505 awarded to Greenleaf until the Office of Hearings and Appeals issues a new decision pursuant to this Court's order.

3) That Chapman Law Firm be awarded its reasonable costs and attorneys' fees, and such further relief as is determined just and fair.

Respectfully submitted,

Date: 6/21/06

By: ______________________

James S. DelSordo, Esq.
John J. O'Brien, of Counsel
Cohen Mohr LLP
1055 Thomas Jefferson St., NW
Suite 504
Washington, D.C. 20007
(202) 342-2550
fax (202) 342-6147

Counsel for Plaintiff Chapman Law Firm Co., LPA