IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Washington, D.C.

| | |
|---|---|
| CHAPMAN LAW FIRM CO.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant<br><br>and<br><br>GREENLEAF CONSTRUCTION CO., INC.<br><br>Intervenor-Defendant. | CFC No. 06-473C<br>Judge Wheeler<br>(Bid Protest) |

**GREENLEAF CONSTRUCTION COMPANY, INC.'S REPLY TO CHAPMAN LAW FIRM CO.'S OPPOSITION TO MOTION FOR LEAVE TO INTERVENE**

Greenleaf Construction Company ("Greenleaf"), by counsel, files this Reply to the Opposition to Motion to Intervene filed by the Chapman Law Firm Co., LPA ("CLF"), dated June 26, 2006. This Reply is timely under Rule 7.2(b) of the Rules of the Court of Federal Claims ("RCFC") as it is filed within seven (7) days of the Opposition.

CLF's Opposition is based upon its objection to Greenleaf's characterization of the Comptroller General decision in the protest of Greenleaf Const. Co., Inc., B-293105.18, Jan. 17, 2006 ("GAO decision"). According to CLF, "Greenleaf's description of the [GAO] decision is totally incorrect and demonstrates that Greenleaf cannot be trusted to fairly present any assertions concerning the decision of other for a, panels, or jurisdiction." Opposition at 1-2.

**A. CLF Cites No Legal Support for Its Opposition**

CLF cites no legal support for its contention that Greenleaf cannot intervene because of its characterization of a GAO decision. Greenleaf is entitled to intervene in this action as a party defendant as of right under RCFC 24, that provides in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action…(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

RCFC 24(a)(2). Under this Rule, Greenleaf is entitled to intervene as of right because (1) Greenleaf has an interest in the subject matter of the action; (2) the protection of Greenleaf's interest would be impaired without intervention; and (3) Greenleaf's interest is not adequately represented by existing parties to the litigation. See e.g., American Renovation and Construction Company v. United States, 65 Fed. Cl. 254 (Fed. Cir. 2005).

There is nothing in RCFC 24 or relevant case law to suggest that a party cannot intervene in an action because its counsel has allegedly mischaracterized a GAO decision that relates to the matter.

CLF appears to be asking the Court to invoke its powers under RCFC 83.2 to enforce some form of disciplinary authority to supervise the conduct of attorneys who are admitted to practice before it. Greenleaf submits that enforcement of disciplinary authority is not appropriate in this case. Even it were, denying Greenleaf the ability to intervene in these proceedings is not the consequence of mischaracterizing a GAO decision. Rather, assuming contrary to fact and common sense, if Greenleaf's counsel

had mischaracterized a GAO decision, it may be grounds to exclude Greenleaf's counsel, not exclude Greenleaf from the proceedings.

In any event, CLF has failed to state a legally cognizable basis for opposing Greenleaf's Motion to Intervene. Therefore, CLF's Opposition must be denied.

**B. Greenleaf Has Accurately Characterized the GAO Decision**

Greenleaf's characterization of the GAO decision that CLF bases its entire Opposition upon reads as follows:

> GAO determined that HUD's purposed award to CLF was invalid because of CLF's misrepresentations to HUD, along with the fact that award to CLF was barred by an unmitigated organizational conflict of interest. Also, CLF was non-responsible.

Opposition at 1. As explained below, Greenleaf has accurately described the GAO decision in all respects.

**1. The GAO Decision Held That CLF Made Misrepresentations to HUD**

With regard to CLF's misrepresentations, the GAO decision raises serious concerns regarding the business integrity and credibility of CLF. GAO found that CLF had engaged in misrepresentations regarding the availability of key personnel and an electronic monitoring system required under the RFP. The GAO decision confirms that CLF improperly withheld from HUD critical information regarding the availability of required items. As GAO found:

> We conclude that there was a ***material change in the awardee's proposed staffing and EMS approach that occurred after CLF certified that its January 2005 FPR remained valid, but more than 2 months prior to the agency's final evaluation and award of the M&M contract***. Under these circumstances, CLF was required to advise the agency of the material change in its proposed resources and technical approach, in order to ensure that the evaluation was based on consideration of the staffing and EMS that CLF actually intended to use in performing the contract. See Dual, Inc., B-280719, Nov. 12, 1998, 98-2 CPD ¶ 133 at 3-6, as recently

> explained in SAMS El Segundo, LLC, B-291620, B-291620.2, Feb. 3, 2003, 2003 CPD ¶ 44 at 19-20. Because CLF failed to do so, the agency never evaluated CLF's actual employees and EMS approach as they existed at the time of award; as a result, the evaluation--and, it follows, the award determination that was based on the results of the evaluation--were unreasonable. Dual, Inc., supra, at 6***. To allow such an award to stand would call into question the integrity of the competition***. Accordingly, we sustain the protest on this basis.

GAO decision at 10 (emphasis added).

The GAO decision also raises troubling issues regarding the credibility of Mr. Chapman, the principal of CLF. GAO expressly noted that its decision was based on "the demeanor of the witnesses." GAO decision at 7.

The GAO decision also reflects a fundamental factual disagreement between Mr. Chapman and his key personnel, Mr. & Mrs. [A]. In resolving the dispute, GAO had to determine who was telling the truth as between the [As] and Mr. Chapman. In contrast to Mr. Chapman's testimony, GAO stated "in particular, we find Ms. [A]'s testimony persuasive. Ms. [A]'s testimony was collaborated not only by the testimony of Mr. [A], but also by the subsequent communications with Mr. Chapman." GAO decision at 7.

There is a clear basis for Greenleaf's characterization that the GAO decision "determined HUD's purposed award to CLF was invalid because of CLF's misrepresentation to HUD."

### 2. Award to CLF Was Barred By an Unmitigated Organizational Conflict Of Interest

With regard to an unmitigated conflict of interest, GAO held:

> We find that ***HUD failed to reasonably consider or evaluate the potential OCI*** arising due to the fact that the owner of CLF (the M&M contractor in Ohio) will be receiving payments from the owner of the closing agent contractor for Ohio, the activities of which CLF will oversee. ***Specifically, it appears that CLF's judgment and objectivity in performing the contract requirements could be impaired if its***

> ***performance could potentially affect the ability of the owner of the closing agent contractor to make the payments owed to CLF's owner*.** Further, while the contracting officer was aware of the potential OCI from having CLF's owner receive a share of Lakeside Title's profits, and proceeded properly to have CLF eliminate that OCI, it is clear that ***the contracting officer failed to consider the OCI implications of the amended version of the purchase agreement*--**whether the magnitude of the payments was such as to call into question whether CLF's judgment and objectivity were likely to be impaired, or whether there were suitable mitigation measures required to address the scope of the potential conflict of interest. In these circumstances, we sustain the protest on the basis that ***HUD failed to reasonably consider or evaluate a potential OCI that may result from an award to CLF*.**

GAO decision at 13 (emphasis added).

Clearly GAO concluded that CLF had an unmitigated conflict of interest. So much so, that it sustained the protest on this ground. How CLF can interpret the GAO decision any other way is not readily apparent.

**3. The GAO Decision Found CLF Was Non-Responsible**

Again, the GAO decision is quite clear on this point:

> Based on this record, ***we find that the determination of CLF's financial responsibility was based on information that the contracting officer knew to be inaccurate.*** Further, since Lakeside Title apparently generated nearly all of the income earned by Mr. Frank Chapman's three related companies, Mr. Chapman's sale of Lakeside Title on an installment basis for payments to be received over 320 weeks clearly was material to a determination of his financial ability to commence and continue performance of the contemplated M&M contract. ***In these circumstances, we find that the contracting officer simply ignored information that, by its nature, would be expected to have a strong bearing on whether CLF should be found financially responsible, and we sustain the protest on this basis.*** Cf. Southwestern Bell Telephone Co., B-292476, Oct. 1, 2003, 2003 CPD ¶ 177 at 10-11 (contracting officer's affirmative determination of the awardee's responsibility is not reasonably based where, despite having general awareness of misconduct by some of awardee's principals and parent company, the contracting officer did not obtain sufficient information about or consider the awardee's record of integrity and business ethics in making his responsibility determination).

GAO decision at 14-15 (emphasis added).

Again, while reasonable minds may differ, GAO decision states that the contracting officer made a responsibility determination based on information she knew to be inaccurate and ignored other information. In light of this, GAO sustained the protest. In addition to the plain language of the GAO decision, the decision in Chapman Law Firm v. United States, No. 06-330C, June 7, 2006 is instructive. There, the Court cites to FAR 9.103(b), that states in relevant part: "In the absence of information clearly indicating that the prospective contractor is responsible, the contracting officer shall make a determination of non-responsibility." While CLF can quibble about the difference between a determination of "non-responsibility" versus "non-responsible," the result is the same. CLF is not responsible. Greenleaf's characterization of the GAO decision is entirely accurate.

**C. Conclusion**

For the reasons set forth herein, CLF's Opposition lacks merit and should be denied. CLF has no legitimate basis for opposing Greenleaf's motion to intervene in the proceedings.

WHEREFORE, Greenleaf requests that this Court grant its Motion for Leave to Intervene.

Respectfully submitted,

Date: June 27, 2006

By: /s/ Alexander J. Brittin

Alexander Brittin, Esq.
BRITTIN LAW GROUP, P.L.L.C.
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 610-4895
Fax: (703) 610-4896

*Counsel for Intervenor-Defendant*
*Greenleaf Construction Company, Inc.*

*Of Counsel*:

Jonathan D. Shaffer
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, VA 22182
Tel: (703) 847-6300
Fax: (703) 847-6312

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June, 2006, a copy of GREENLEAF CONSTRUCTION COMPANY, INC.'S REPLY TO CHAPMAN LAW FIRM CO.'S OPPOSITION TO MOTION FOR LEAVE TO INTERVENE was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Alexander J. Brittin

Alexander J. Brittin