**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CHAPMAN LAW FIRM CO.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES *et al.*<br><br>Defendants. | CFC No. 06-473C<br>(Judge Wheeler) |

**OPPOSITION TO DEFENDANT'S AND**
**<u>INTERVENOR'S MOTIONS TO DISMISS</u>**

Date: July 7, 2006

James S. DelSordo, Esq.
John J. O'Brien, Of Counsel
Cohen Mohr, LLP
1055 Thomas Jefferson St., NW
Suite 504
Washington, DC 20007
(202) 342-2550
fax (202) 342-6147

Counsel for Plaintiff Chapman Law Firm Co., LPA

# TABLE OF CONTENTS

I. Questions Involved....1

II. Statement of the Case....1

A. The Procurement....1

B. The Size Determination on Remand....3

C. The Further Progress of the Procurement....3

D. Greenleaf Protests the Award to CLF....5

III. Argument....7

A. The Court has Jurisdiction Over this Matter....7

B. 28 U.S.C. § 1500 is no Bar to this Case....10

C. There is no Res Judicata Bar Here....11

IV. Conclusion....13

# TABLE OF AUTHORITIES

I. Statutes and Regulations

28 U.S.C. § 1500........................................................................1, 10, 11

28 U.S.C. § 1491(b)(1)........................................................................1, 8

31 CFR § 121.1001(a)(i)........................................................................7

31 U.S.C. § 3553........................................................................9

48 CFR § 19.302(i)........................................................................11

II. Caselaw

Advanced Systems Technology, Inc. v. United States, 69 Fed. Cl. 474, 481 (2006)................9

Altos Federal Group, Inc. v. United States, 60 Fed. Cl. 832 (2004)..................................9

Bernaugh v. United States, 38 Fed. Cl. 538, 544 (1997)..........................................12

Blue Tee Corp., B-258976 *et al.*, January 5, 1995, 96-1 CPD ¶ 172..................................7

Ceres Envtl. Ervices, Inc. v. United States, 52 Fed. Cl. 23 (2002)....................................8

Chapman Law Firm v. United States, 63 Fed. Cl. 25, 33-34 (2004)..............................8, 13

Chapman Law Firm v. United States, 63 Fed. Cl. 519 (2005).......................................12

DeVries v. United States, 28 Fed. Cl. 496, 498 (1993)............................................12

Finch v. Hughes Aircraft Co., 926 F.2d 1574, 1581 (Fed. Cir. 1991)..............................12

Greenleaf Const. Co., Inc. v. United States, 67 Fed. Cl. 350 (2005)...............................2, 5

Greenleaf Construction Co., Inc., B-293105.18 *et al.*, Jan. 17, 2006, 2006 CPD ¶ 19..............5

Keeton Corrections, Inc. v. United States, 59 Fed. Cl. 753 (2004)...................................9

LaBarge Products, Inc. v. United States, 46 F.3d 1547 (Fed. Cir. 1995)...........................10

LB&B Assoc., Inc. v. United States, 68 Fed. Cl. 765, 770 (2005)...................................9

Mark Dunning Indus., Inc. v. United States, 60 Fed. Cl. 687 (2004)..................................8

MVM, Inc. v. United States, 46 Fed. Cl. 137 (1999)....................................................9

PGBA, LLC v. United States, 57 Fed. Cl. 655 (2003)..................................................9

Phoenix Petroleum Co. v. United States, 40 Fed. Cl. 862 (1998)....................................12

Red River Service Corp. v. United States, 60 Fed. Cl. 532, 537 (2004)...........................8, 9

SDS International, Inc. v. United States, 55 Fed. Cl. 363 (2003).......................................9

Sierra Military Health Services, Inc. v. United States, 58 Fed. Cl. 573 (2003)......................9

Speco Corp. v. United States, 2 Cl. Ct. 335, 337 (1983) *rev'd* Cavalier Clothes, Inc. v. United States, 810 F.2d 1108 (Fed. Cir. 1987)..............................................................8

Stapp Towing, inc. v. United States, 34 Fed. Cl. 300 (1995)..........................................9

United International Investigative Services, Inc. v. United States, 41 Fed. Cl. 312 (1998).........9

**COMES NOW** the Chapman Law Firm Co., LPA ("CLF"), by and through undersigned counsel, and in accordance with the Court's scheduling order, dated June 27, 2006, hereby files this Opposition to the Motions to Dismiss filed by Defendant the United States and Defendant Intervenor Greenleaf Construction Co., Inc. ("Greenleaf"). Both the Government and Greenleaf contend that this matter should be dismissed either under 28 U.S.C. § 1500 or for *res judicata* reasons. Since both motions incorrectly assume that this case arises from the same transaction or claim as an earlier case and the Court has jurisdiction to consider CLF's claims, the motions should be denied.

## I. Questions Involved

1) Whether the Court has subject matter jurisdiction under 28 U.S.C. § 1491(b)(1) over the appeals from the decisions of the Small Business Administration's Office of Hearing and Appeals.

2) Whether the Court's jurisdiction over this matter is affected by 15 U.S.C. § 1500.

3) Whether *res judicata* has any affect over the Court's consideration of this matter.

## II. Statement of the Case

### A. The Procurement

On August 6, 2003, HUD issued a solicitation for the Management and Marketing of Single Family Homes under Request for Proposal Number R-OPC-22505, which seeks proposals to provide:

> Management & Marketing services to successfully monitor mortgagee compliance with the Department's property conveyance requirements, to successfully manage single family properties owned by, or in the custody of, the Department of Housing and Urban Development (HUD), to successfully market those single

> family properties which are owned by HUD, and to successfully oversee the sales closing activity, including proper accounting for HUD's sales proceeds.

RFP at 3. The procurement for the services at issue here was set-aside for award to small businesses under 48 CFR Subpart 19.5. See Greenleaf Const. Co., Inc. v. United States, 67 Fed. Cl. 350 (2005).

Chapman submitted a proposal that was found to be within the "competitive range" for award of the M&M Contract. Chapman engaged in a series of written negotiations with HUD regarding potential award of the M&M Contract.

On July 8, 2004, the Contracting Officer (CO) notified the offerors that Greenleaf was the apparent successful offeror. On July 14, 2004, CLF filed a size protest against Greenleaf. CLF alleged that Greenleaf was other than small because its relationship with its ostensible subcontractor, Michaelson, Connor & Boul, Inc. ("MCB"), MCB is also the incumbent contractor, was really that of a joint venture.

On July 29, 2004, the SBA Office of Government Contracting - Area IV (the "Area Office") in Chicago, Illinois, issued Size Determination No. 4-2004-60. In that decision the Area Office found that, although Greenleaf's receipts were below the size standard, because Greenleaf was engaged in a joint venture with MCB, and therefore MCB's receipts had to be combined with those of Greenleaf, Greenleaf was other than small for this contract.

On August 13, 2004, Greenleaf filed an appeal of the Area Office decision with OHA. On November 1, 2004, OHA issued Greenleaf I, remanding the case to the Area Office for a new size determination.

In Greenleaf I, in addition to finding the size determination conclusory and based on only a superficial review of the evidence, the OHA Administrative Judge found the Area Office had

been unclear as to the test it was applying on the ostensible subcontractor issue, and ordered the Area Office, on remand, to use only the "unusual reliance" test provided in the regulation, and not the "seven factors" test. The OHA Administrative Judge also ruled the mention of "team" and "partnering" between Greenleaf and MCB, throughout Greenleaf's entire proposal and that significant portions of the proposal were written in the "voice" of MCB, did not mandate an ostensible subcontractor relationship.

**B. The Size Determination on Remand**

On December 2, 2004, the Area Office issued Size Determination No. 4-2004-60 (R), which reaffirmed its earlier determination that Greenleaf was engaged in a joint venture with MCB, and was thus other than small. In its remand decision the Area Office began by finding that Greenleaf's sole shareholder is Bryon L. McIntosh. Mr. McIntosh's wife and son own Pillar Construction ("Pillar"), an inactive corporation. The Area Office found Greenleaf affiliated with Pillar, due to the family ties. The Area Office also found that Greenleaf and its affiliate Pillar, taken together, are small under the applicable size standard.

**C. The Further Progress of the Procurement**

On December 17, 2004, Greenleaf filed an appeal of the Area Office remand decision to OHA. On April 20, 2005 the Plaintiff learned via a review of HUD's website that award had been made to Greenleaf under the RFP for Philadelphia 2. The award was dated April 19, 2005; however, HUD's website identified the effective date of the contract as April 1, 2005. CLF immediately requested a debriefing from the contracting officer on April 20, 2005. CLF received a written debriefing on May 2, 2005.

According to the debriefing provided to the Plaintiff both Greenleaf and CLF received the highest technical ratings of Excellent. CLF's proposed price was in the middle of the prices offered by the concerns considered for award. Specifically, according to the debriefing, Greenleaf's total estimated price was $106,756,714, the Plaintiff's total estimated price was $123,235,990.

Based on the information in the debriefing, CLF protested the award to Greenleaf to the Comptroller General, which protest was docketed as Chapman Law Firm Co., LPA, B-293105.15, B-293105.16. The Plaintiff's protest was predicated on the Government's award of a contract to a large business when there was adequate competition among small business firms, and this award was restricted to award to small businesses. CLF timely supplemented its protest to allege that Greenleaf's false certification of its size status rendered it illegible for award.

HUD moved to dismiss the protest on the basis that it did not receive adequate competition under the terms of the RFP because of the withdrawal of another offeror from the procurement. The Comptroller General sought the input of the SBA concerning the issue of whether adequate competition was achieved under the terms of the RFP. By letter, dated June 2, 2005, the SBA stated that adequate competition had been achieved and recommended that the Comptroller General sustain CLF's protest.

In its brief the SBA asserted, correctly, that Greenleaf's subsequent determination of size status would not permit the cascade to unrestricted award even if CLF was the only small business offeror remaining. Id. at 3. The SBA concluded that the award to Greenleaf was improper and urged the Comptroller General to sustain CLF's protest. Despite a scheduling order directing the agency to respond to the SBA's submission, HUD elected to file no response. CLF filed its comments to the agency report on June 10, 2005. By letter, dated June 17, 2005, HUD

announced its intention to take corrective action by terminating Greenleaf's contract and awarding a contract for the Philadelphia 2 marketing and management services to CLF. HUD subsequently terminated Greenleaf's contract for the convenience of the Government. Greenleaf then protested HUD's corrective action to the U.S. Court of Federal Claims, which protest was denied on August 31, 2005. See Greenleaf Const. Co., Inc. v. United States, 67 Fed. Cl. 350 (2005).

By letter, dated September 30, 2005, HUD awarded a contract to the Plaintiff under the Solicitation to provide single family home marketing and management services in the Philadelphia Homeownership Center ("HOC"), Region 2 (Ohio and Michigan).

**D. Greenleaf Protests the Award to CLF**

The contract award to CLF was the subject of a protest filed at the GAO by Greenleaf which protest was docketed as Greenleaf Construction Co., Inc., Solicitation No. R-OPC-22505, B-293105.18. After a hearing on the merits the Comptroller General sustained Greenleaf's protest, see Greenleaf Construction Co., Inc., B-293105.18 *et al.*, Jan. 17, 2006, 2006 CPD ¶ 19, the GAO's ruling makes no finding that the award to CLF was improper nor was the award to CLF disturbed in any way. However, the GAO recommended that HUD reevaluate CLF's proposal and if that reevaluation confirmed CLF's ability to perform the contract, HUD was free to begin performance with CLF.

Following the GAO Decision, HUD made absolutely no attempt to initiate communications with CLF or to request additional information from CLF regarding any of the items raised in the GAO Decision. On January 26, 2006, Frank Chapman called Contracting Officer Brenda Thomas in an attempt to find out HUD's intentions and initiate a dialogue

regarding the M&M Contract. Ms. Thomas provided no additional information. Mr. Chapman followed up with an emailing, also on January 26, stating, "Thank you for speaking with me. I look forward to hearing from you shortly." After hearing nothing from HUD, on January 27, 2006, on its own initiative, CLF sent a comprehensive letter to HUD detailing how it had adequately and comprehensively addressed each and every concern raised in the GAO Decision, offered to provide any additional information required and reiterated that CLF was ready, willing and able to perform under the M&M Contract.

HUD provided no response to CLF following the letter of January 27, 2006 and did not, on any occasion, ask CLF for additional information or assistance in responding to the GAO Decision. In addition to the letter sent by CLF on January 27, 2006, CLF successfully passed a Modified Condition Risk Assessment conducted by the Defense Contract Audit Agency. The results of this Audit were reported to Nicole Hunt, Contract Specialist *and* Maureen Musilli, Contracting Officer, as well as other HUD officials, on March 13, 2006.

On April 19, 2006, without any prior warning or discussion, CLF received notice that its contract had been terminated for convenience of the Government and that "Funding in the amount of $29,644,228 is de-obligated from the contract." Additionally, on April 19, 2006, HUD notified the GAO by letter that it would not be providing a report relating to the GAO Decision, dated January 17, 2006, as the procurement had been cancelled and, therefore, the GAO Decision was irrelevant. Also on April 19, 2006 HUD issued a new pre-solicitation notice of procurement for management and marketing services which was posted on FedBizOpps.gov seeking a contract to provide exactly the same services CLF was ready, willing and able to provide under the M&M Contract. In response to the Government's actions, CLF filed a protest at this Court seeking a ruling that HUD's response to the GAO decision was arbitrary and

capricious. CLF's case was docketed as Chapman Law Firm v. United States, CoFC No. 06-330. In the end the Government decided to take corrective action after development of the record by CLF through depositions and additional documents and the Court's decision giving operative effect to the OHA decision in contravention of the dictates of 48 CFR § 19.302(i).

The movants make much of the fact that after the Court's ruling on the Government's Motion to Dismiss in CoFC No. 06-330 and the Government's announced corrective action CLF stated that it had no further issues relating to that litigation that needed to be addressed. This is absolutely correct. The Court's ruling and the Government's announced corrective action left no case or controversy arising from the Government's response to the GAO decision, dated January 27, 2006. The substance of the OHA decision was not at issue in that litigation; therefore, there was nothing for CLF to raise at that point.

While HUD was considering its response to the GAO, on February 16, 2006, OHA upheld Greenleaf's appeal and found that Greenleaf and OHA were not affiliated for this procurement. CLF filed this action appealing from the OHA decision on June 21, 2006.

## III. Argument

### A. The Court has Jurisdiction Over this Matter

As an offeror for the award under the RFP CLF was permitted to submit a protest to the SBA seeking a determination of the size status of Greenleaf. See 31 CFR § 121.1001(a)(i). Such protests cannot be brought to the GAO. See Blue Tee Corp., B-258976 *et al.*, January 5, 1995, 96-1 CPD ¶ 172. In the initial telephone conference between the parties and the Court, the Court asked the litigants to provide briefing on the issue of whether the Court had subject matter jurisdiction to consider this matter. The Court indicated that it was aware of the decision by

Judge Hewitt of the Court finding such jurisdiction, see Chapman Law Firm v. United States, 63 Fed. Cl. 25, 33-34 (2004); but the Court indicated that it was aware of contrary precedent. See Red River Service Corp. v. United States, 60 Fed. Cl. 532, 537 (2004). In their briefs neither the agency nor Greenleaf disputed that Judge Hewitt's decision was controlling and that the Court has subject matter jurisdiction. Despite the parties' agreement that the Court has jurisdiction, CLF addresses the issue in order to fully assuage the Court's concerns.

Prior to ADRA the normal route for judicial review by a party aggrieved by an OHA decision was to a federal district court. See Red River Service Corp. v. United States, 60 Fed. Cl. 532, 537 (2004); Speco Corp. v. United States, 2 Cl. Ct. 335, 337 (1983) *rev'd* Cavalier Clothes, Inc. v. United States, 810 F.2d 1108 (Fed. Cir. 1987). Via ADRA Congress expanded the Court's jurisdiction to consider post-award procurement disputes. Specifically, ADRA states in pertinent part:

> [The United States Court of Federal Claims] shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

See 28 U.S.C. § 1491(b)(1). Although the Court in Red River and previously in Speco Corp. refused to take jurisdiction in cases arising from SBA determinations concerning the appropriate size standard to be employed in a procurement and a protest concerning the issuance of a Certificate of Competency, other decisions have taken jurisdiction to consider these issues and other decisions by OHA. See Mark Dunning Indus., Inc. v. United States, 60 Fed. Cl. 687 (2004) (HUBZone qualification); Ceres Envtl. Ervices, Inc. v. United States, 52 Fed. Cl. 23 (2002)

(whether RFP applies the correct size standard); Stapp Towing, inc. v. United States, 34 Fed. Cl. 300 (1995) (propriety of certificate of competency).

The same issue has arisen in other contexts relating to post-award procurement disputes since the passing of ADRA. For example, the Court struggled with its role in post-award protests of award decisions in a series of decisions relating to the award of Court Security contracts by the U.S. Marshal's Service. See MVM, Inc. v. United States, 46 Fed. Cl. 137 (1999); United International Investigative Services, Inc. v. United States, 41 Fed. Cl. 312 (1998). More recently the Court has wrestled with its jurisdiction to consider requests for injunctive relief arising from the Government's decision to override the automatic stay imposed on contract performance pending the resolution of protests before the Government Accountability Office. See 31 U.S.C. § 3553; see also Altos Federal Group, Inc. v. United States, 60 Fed. Cl. 832 (2004); Keeton Corrections, Inc. v. United States, 59 Fed. Cl. 753 (2004); PGBA, LLC v. United States, 57 Fed. Cl. 655 (2003); Sierra Military Health Services, Inc. v. United States, 58 Fed. Cl. 573 (2003); SDS International, Inc. v. United States, 55 Fed. Cl. 363 (2003). In all of these instances the Court has determined that it does have jurisdiction to consider whether an agency's action in the context of a federal procurement is arbitrary and capricious. Clearly the Court's decision in Red River was literally swimming against the steady stream of precedent and the Court should decline to follow it here. This is particularly true in light of Judge Hewitt's decision finding jurisdiction. Judge Hewitt's decision has been followed on two occasions, and there is no precedent following the reasoning in Red River. See Advanced Systems Technology, Inc. v. United States, 69 Fed. Cl. 474, 481 (2006); LB&B Assoc., Inc. v. United States, 68 Fed. Cl. 765, 770 (2005).

**B. 28 U.S.C. § 1500 is no Bar to this Case**

Both the Government and Greenleaf contend that this Court has no jurisdiction over this matter because CLF has appealed to the U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") from the Court's decision in Chapman Law Firm Co v. United States, CoFC No. 06-330. The movants point to the language of 28 U.S.C. § 1500 which states in pertinent part, "The United States Court of Federal Claims shall not have jurisdiction [over] any claim ··· which the plaintiff ··· has pending in any other court ··· against the United States." The movants assert that the instant case (06-473) is the same claim as is pending before the Federal Circuit. While this case and the prior case relate to the same procurement that does not mean that they are the same claim or that CLF is precluded from pursuing both cases at this time. The Federal Circuit has stated:

> For purposes of jurisdiction, a claim is typically defined by operative facts and relief requested. *See, e.g., Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1551 (Fed. Cir. 1994)* (for two claims to be the same under 28 U.S.C. § 1500, a bar to jurisdiction, they must arise from the same operative facts, and must seek the same relief); Johns-Mansville Corp. v. United States, 855 F.2d 1556, 1562 (Fed. Cir. 1988) (claims are distinguished under 28 U.S.C. § 1500 by their operative facts and not by the legal theories on which they are based), *cert. denied*, 489 U.S. 1066 (1989).

See LaBarge Products, Inc. v. United States, 46 F.3d 1547 (Fed. Cir. 1995). Therefore, the test is whether the two cases arise from the same facts. That test is not met here.

The current case arises solely from the SBA Office of Hearing and Appeals' decision overturning the SBA Area Office determination was other than small. The prior case (06-330) dealt with HUD's response to the GAO decision, dated January 17, 2006. The two are not dependant on one another other than the fact that both HUD and CLF assumed that the OHA decision was irrelevant to the prior litigation relating to the contract awarded to CLF on

September 30, 2005. See 48 CFR § 19.302(i). While the one case may affect the other they do not arise from the same operative facts. The current case relates to the actions of the SBA under one set of statutes and regulations, while the other case related to the actions of HUD under another set of regulations and statutes. The factual allegations in both complaints are different and address the actions of separate Government agencies exercising distinct roles in the procurement system.

The movants contend that these cases are the same here because the administrative records are in the Government's mind the same. While the Government certainly produced a comprehensive record of the procurement under the RFP relating to the Philadelphia 2 region as the Court noted in the original conference call in this matter, that case actually only referenced and employed a fraction of the record filed by the Government. Additionally, the prior case did not consider the substance of the OHA decision; only the fact of its existence was relevant. Furthermore, despite the Government claim that the records here are the same, the record filed in this case contains a number of documents not include in the prior record.

## C. There is no Res Judicata Bar Here

The analysis of the issue of whether there is any *res judicata* effect arising from CoFC No. 06-330 on CoFC No. 06-473 follows similar lines as that described under 28 U.S.C. § 1500. In order for CoFC No. 06-330 to have *res judicata* effect and require the dismissal of this case the Court must find the following:

1) a prior suit resulted in a final judgment on the merits;

2) the prior suit was based on proper jurisdiction;

3) both suits involve the same causes of action; and

4) both suits involve the same parties or their privies

See Phoenix Petroleum Co. v. United States, 40 Fed. Cl. 862 (1998); see also DeVries v. United States, 28 Fed. Cl. 496, 498 (1993). Although factors 1, 2 and 4 are met by this case, importantly factor 3 is missing—CoFC No. 06-330 and 06-473 do not involve the same cause of action. As we stated above, the current case arises solely from the SBA Office of Hearing and Appeals' decision overturning the SBA Area Office determination was other than small. The prior case (06-330) dealt with HUD's response to the GAO decision, dated January 17, 2006.

Presumably the movants will then assert that *res judicata* also bars claims that could have been brought in the prior litigation. See Finch v. Hughes Aircraft Co., 926 F.2d 1574, 1581 (Fed. Cir. 1991). In Finch the non-moving party attempted to relitigate the exact same claims that were present in a prior litigation. That is not the case here. In analyzing this issue the Court must determine whether the two cases arise from the same transaction. To determine whether the two suits are based on the same cause of action, the court must look to the underlying facts. If the underlying facts are identical in both suits, then the suits are based on the same cause of action. See Phoenix Petroleum Co. v. United States, 40 Fed. Cl. 862 (1998); Bernaugh v. United States, 38 Fed. Cl. 538, 544 (1997). Here we have two cases that arise from two different Government agencies considering different issues subject to different statutes and regulations—they are not the same transaction.

Instructive in analyzing this issue is the history of the litigation surrounding this procurement. In the Fall of 2004 CLF filed two lawsuits. The first was an appeal from the GAO's decision denying a protest concerning the award of a contract in the Atlanta 1 region (Illinois and Indiana) under the RFP to a company named Harrington Moran & Barksdale, Inc. ("HMBI"). See Chapman Law Firm v. United States, 63 Fed. Cl. 519 (2005) (Hewitt, J.). The

second case was an appeal from an OHA decision dismissing CLF's size protest against HUD's award of the Atlanta 1 contract to HMBI. See Chapman Law Firm v. United States, 63 Fed. Cl. 25 (2004) (Hewitt, J.).[1] Neither the Government, HMBI, nor the Court asserted that the two cases should be consolidated or considered together in any way. In fact the issue never came up. The two cases were totally distinct relating to two different sets of facts and two different sets of law. The same applies here and the Court should not give credit to the Government's and Greenleaf's claims here.

## IV. Conclusion

For the foregoing reasons Plaintiff respectfully requests that the Court deny the Defendants' Motions and move forward to consider the substance of CLF's claims.

Respectfully submitted,

Date: 7/7/06

By: ______________________

James S. DelSordo, Esq.
John J. O'Brien, Of Counsel
Cohen Mohr, LLP
1055 Thomas Jefferson St., NW
Suite 504
Washington, DC 20007
(202) 342-2550
fax (202) 342-6147

Counsel for Plaintiff Chapman Law Firm Co., LPA

[1] Interestingly, counsel for Greenleaf here also represented HMBI in those cases.

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July 2006, a copy of the foregoing Opposition to Defendant's and Intervenor's Motion to Dismiss was served by electronic mail via the Court's CM/ECF:

Counsel for the United States Sameer Yerawadekar, Esq., United States Department of Justice, Commercial Litigation Branch, 1100 L Street, N.W., Washington, DC 20530; and

Counsel for Greenleaf Construction Co., Inc., Alexander Brittin, Esq., 8000 Towers Crescent Dr., Suite 900, Vienna, Virginia 22182.

James S. DelSordo